IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| FRANK SLOTKUS,<br><br>    Plaintiff<br><br>v.<br><br>BOARD OF EDUCATION OF THE CITY OF CHICAGO,<br><br>    Defendant | Case No.:  2016L012741<br>Calendar:<br><br>**DEMAND FOR JURY TRIAL**<br>Damages in excess of $50,000 |

## VERIFIED COMPLAINT FOR EMPLOYMENT DISCRIMINATION

Plaintiff Frank Slotkus, by and through his attorneys, Potratz & Associates, P.C., hereby complains against Defendant Chicago Board of Education, as follows:

### The Parties

1. Plaintiff Frank Slotkus (hereinafter "Plaintiff") is a resident of the City of Chicago, Cook County, Illinois. He has been employed by Defendant Board of Education of the City of Chicago as a school teacher at Hamline Elementary School since 2001. He was suspended from his position on or about October 16, 2014 and remains on suspension as of the filing of this Complaint.

2. Defendant Board of Education of the City of Chicago (hereinafter "Defendant") is a corporate, governmental body and a political subdivision of the State of Illinois located in the City of Chicago, Cook County, Illinois.

### Jurisdiction and Venue

3. On March 9, 2015, Plaintiff perfected timely charges of discrimination against Defendant with the Unites States Equal Employment Opportunity Commission (hereinafter "EEOC").



4. Also on March 9, 2015, Plaintiff's timely charges of discrimination were automatically filed with the Illinois Department of Human Rights (hereinafter "IDHR") pursuant to a cooperative agreement between EEOC and IDHR.

5. On September 29, 2016, EEOC issued a Dismissal and Notice of Right to Sue.

6. On October 12, 2016, Plaintiff received the EEOC Dismissal and Notice of Right to Sue.

7. As of the date of filing this Complaint, Plaintiff has not received a Notice of Right to Sue from IDHR.

8. This Court has concurrent jurisdiction over claims arising under the Americans with Disabilities Act of 1990.

9. This Court has original jurisdiction over claims of Intentional Infliction of Emotional Distress arising under Illinois law.

10. Venue is proper in this Court because the Defendant's actions giving rise to Plaintiff's claims for relief occurred in Cook County, Illinois; and because Defendant is located in Cook County, Illinois.

## Allegations of Fact Common to All Counts

11. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, 42 U.S.C. 12101, et seq. (hereinafter "ADA").

12. Defendant employs more than fifteen (15) employees at its place of business and is not a federal governmental agency.

13. Plaintiff filed a complaint before the EEOC asserting the acts of discrimination indicated in this Complaint on or about March 9, 2015, which said agency cross-filed with the IDES, a copy of which is attached hereto as **Exhibit A**.

14. Plaintiff received a Dismissal and Notice of Suit Rights from the EEOC which was issued on September 29, 2016, a copy of which is attached hereto as **Exhibit B**.

15. Plaintiff was hired by Defendant as a teacher in 2001.

16. For all times relevant herein, Taina Velazquez-Drover (hereinafter "Drover") was the principal at Hamline Elementary School, head of administration at the school and Plaintiff's supervisor.

17. Drover was hired as principal in June 2012, pursuant to a public vote of the Local School Council (hereinafter "LSC").

18. Plaintiff was a voting member of the LSC at the time they were considering hiring Drover.

19. Plaintiff voted against hiring Drover.

20. Drover was aware of Plaintiff's vote against her.

21. For all times relevant herein, Wilma M. David (hereinafter "David") was the vice-principal at Hamline Elementary School, a member of school administration, and also one of Plaintiff's supervisors.

22. David was hired as vice-principal by Drover a just a few days after Drover assumed her position as principal.

23. Plaintiff suffers from Hyperhidrosis, a chronic condition characterized by abnormally increased sweating, in excess of that required for normal regulation of body temperature.

24. Plaintiff also suffered from Legg–Calvé–Perthes disease, a chronic hip disorder characterized by severe and debilitating pain caused by osteonecrosis of the femoral head, ultimately leading to its collapse.

25. Plaintiff's Legg–Calvé–Perthes disease caused him severe and debilitating pain in his right hip and knee.

26. Plaintiff suffered from Hyperhidrosis and Legg–Calvé–Perthes disease at the time he was hired by Defendant in 2001.

27. Both Hyperhidrosis and Legg–Calvé–Perthes disease are qualified disabilities within the scope of 42 U.S.C. 12102.

28. Plaintiff presented Hamline Elementary Administration with doctor's notes on or about May 2008, August 2012, January 2014, February 2014 and September 2014, confirming his Hyperhydrosis and Legg–Calvé–Perthes disease, which were placed in his employee file, putting Defendant on notice of his disabilities.

29. Plaintiff ultimately required surgery for a total hip arthroplasty, which was performed on February 7, 2014, and which required him to be on an extended leave of absence from January 14, 2014 through April 21, 2014.

30. Plaintiff was to remain under his doctor's care following the hip surgery until August 2015, and school administration was made aware of this fact.

31. Since at least 2007 and through the time of his hip surgery, Plaintiff's physician prescribed him certain narcotic pain medications to alleviate the severe pain throughout his right leg.

32. Shortly after his surgery, Plaintiff's physician decided to end Plaintiff's pain treatment with the narcotic pain medication.

33. Because terminating narcotic pain medication after taking it for a long period of time can result in severe withdrawal effects, Plaintiff's physician prescribed him Suboxone, which is used to prevent and treat the withdrawal effects that attend termination of narcotic pain medications.

34. One of the several side effects of Suboxone is excessive perspiration.

35. Plaintiff's hyperhidrosis was exacerbated by the Suboxone, resulting in an increase in his profuse sweating.

36. Plaintiff returned to work after his hip surgery on April 21, 2014 and resumed his position as a teacher at Hamline Elementary School.

37. Plaintiff's classroom was located on the third floor of the main building at Hamline Elementary School.

38. There was no elevator access to the third floor of the school, which required Plaintiff to use the stairs multiple times during each school day, aggravating the pain in his right hip and knee, and increasing the time it took Plaintiff to move about the school building.

39. Plaintiff's classroom was also perpetually hot due to a poorly functioning HVAC system, which aggravated Plaintiff's hyperhidrosis.

40. Plaintiff made multiple requests to Defendant, through school administration, to be moved to a classroom on a lower floor of the school building to accommodate his leg condition.

41. Plaintiff also made multiple requests to Defendant, through school administration, to have the HVAC system in his classroom adjusted or repaired to reduce the excessively high temperature in the room which was aggravating his hyperhidrosis.

42. Plaintiff's requests for reasonable accommodations were never acted upon by the school administration.

43. Drover was aware that Plaintiff suffered from hyperhidrosis and Legg–Calvé–Perthes disease, and how these conditions affected Plaintiff on a daily basis.

44. Drover was, or should have been, aware that there were notices in Plaintiff's employee file documenting his suffering from hyperhidrosis and Legg–Calvé–Perthes disease.

45. Drover was, or should have been, aware that Plaintiff's medical conditions constituted disabilities under the ADA.

46. Drover and other members of school administration witnessed Plaintiff's profuse sweating on many occasions since she was hired as principal.

47. Drover and other members of school administration witnessed Plaintiff's ambulatory difficulties and resultant pain on many occasions since she was hired as principal.

48. Drover was aware of Plaintiff's requests for reasonable accommodations.

49. As school principal and head of school administration, Drover had the authority to provide for Plaintiff's requests for reasonable accommodations.

50. Drover had a history of making disparaging remarks to Plaintiff about his medical conditions.

51. In August 2014, after receiving a total hip replacement in February 2014, Drover required Plaintiff to perform excessive manual labor organizing his classroom aggravating Plaintiff's hyperhidrosis and causing him extreme pain in his hip and knee.

52. On August 29, 2014, when Drover observed Plaintiff sweating profusely and in extreme pain, she said to Plaintiff "Are you sweating because I make you anxious?"

53. There were many occasions in which Plaintiff was targeted and harassed by both Drover and David because of his medical conditions, including in front of students and other school staff, causing Plaintiff great humiliation.

54. Following his hip surgery, Plaintiff was required to utilize a cane when he walked.

55. School administration was aware that Plaintiff was required to use a cane.

56. On October 16, 2014, Plaintiff was scheduled to meet with Drover at 8:10 a.m. in her office regarding an earlier teaching evaluation (hereinafter "the meeting").

57. Plaintiff was at the school, as required, at 8:00 a.m. on the day of the meeting.

58. Plaintiff was having severe right knee pain on that day.

59. Starting at 8:00 a.m., Plaintiff was required to complete his usual morning duties prior to the meeting, which included greeting his students, forming them into lines and taking them to the first-floor cafeteria to choose their breakfasts, then taking them up the stairs to his classroom, whereupon he was required to monitor the students putting their coats and bags in the closet and getting their books and school supplies ready, then allowing the students time to eat their breakfasts, answer any group/individual questions that they had, collect the students' food refuse, recite the Pledge of Allegiance as a class, take manual attendance, sign into his CPS account and then enter the attendance electronically.

60. Drover and David were aware of the tasks Plaintiff was required to complete at the beginning of the school day.

61. Even though Drover was aware of these tasks, she still notified Plaintiff that he was required to meet with her at 8:10 a.m., giving Plaintiff only 10 minutes to complete his required tasks, then walk, with his cane and attendant knee pain, from his classroom, down the three flights of stairs, to Drover's office.

62. Because he had to complete these tasks prior to the meeting with Drover, and because he had difficulty walking, particularly down the several flights of stairs, Plaintiff was not able to arrive for the meeting until 8:30 a.m.

63. At the time she scheduled the meeting, Drover knew that Plaintiff could not complete his tasks and walk to her office by 8:10 a.m.

64. Drover intentionally set the meeting at 8:10 a.m. because it was her intention to have Plaintiff arrive late, causing him pain, stress and anxiety in his attempt to complete his required tasks and still arrive at the meeting on time.

65. Because Plaintiff rushed to complete his required tasks and get to Drover's office as quickly as possible, aggravating his hyperhidrosis condition, he began sweating obviously and profusely.

66. When Plaintiff arrived for the meeting with Drover, David was also present.

67. When Plaintiff arrived for the meeting, Drover and David witnessed his profuse sweating, which they knew was consistent with his hyperhidrosis condition.

68. Plaintiff advised Drover and David that he was experiencing severe knee pain.

69. Initially during the meeting, Drover discussed matters related to teaching with Plaintiff.

70. Approximately one hour and forty-five minutes into the meeting, with only Drover and Plaintiff in the office, Drover presented Plaintiff with a notice from Defendant directing him to immediately submit to drug and alcohol testing.

71. During the meeting, and without Plaintiff's knowledge, Drover, with the assistance of David, sent a written request to Defendant seeking authority to require Plaintiff to submit to drug and alcohol testing.

72. Plaintiff told Drover he did not understand why he was being presented with the testing notice.

73. Drover did not advise Plaintiff why he received the testing notice or of the basis for the testing notice.

74. Upon reading the notice, Plaintiff requested that he be allowed to speak to a Chicago Teacher's Union representative and his physician.

75. Plaintiff made this request at least ten times.

76. Plaintiff also advised Drover that he was having extreme pain in his right knee and wanted to go to the emergency room to have it checked.

77. Plaintiff further advised Drover that he wanted to contact his physician because he was allergic to latex and was concerned that the testing procedure may cause him to come into contact with latex.

78. Drover knew that Plaintiff was entitled to speak with a union representative before submitting to drug and alcohol testing.

79. Drover refused to allow Plaintiff to make a phone call to either his union representative or his physician.

80. Drover also refused to allow Plaintiff to return to his classroom to retrieve his personal belongings, including his phone.

81. At the time of the meeting, there was a union delegate present in the school.

82. Drover was aware the union delegate was in the school.

83. Drover did not advise Plaintiff that a union delegate was present in the school.

84. Drover did not make any attempt to contact the union delegate pursuant to Plaintiff's request to speak to a union representative.

85. Drover told Plaintiff that he would have to leave the school if he wanted to call his union representative and his physician.

86. Approximately one hour after being presented with the testing notice, during which time Drover never informed him why he received the testing notice or allowed him to contact his union representative, Plaintiff was presented with his personal belongings that had been in his classroom.

87. After Plaintiff received his personal belongings, Drover told him he had to leave the school premises.

88. Plaintiff left the school premises as requested and immediately called his union representative, his physician and Defendant's employee services office.

89. His union representative advised him to submit to the required tests and to call his physician.

90. Plaintiff called his physician, who advised him to get a "10 Screen" drug test.

91. Plaintiff then called Drover and advised her he had spoken to his union representative and physician, that he was ready to submit to the required testing, and asked her where he should go for the test.

92. Drover told Plaintiff "The nurse has left. Have a wonderful day" and then abruptly terminated the call.

93. Plaintiff also called Defendant's employee services office, as indicated on the testing notice, to find out where he should take the test, but they did not offer him any information.

94. Plaintiff then went to Little Company of Mary Care Station in nearby Oak Lawn, Illinois to seek a "10 Screen" drug test and treatment for his knee pain.

95. Neither Drover nor David had ever received any training regarding when it was appropriate to require an employee to submit to a drug and alcohol test, nor were they trained in what warning signs to look for to alert them an employee may be under the influence of drugs or alcohol.

96. Plaintiff was never notified of Defendant's policy regarding the taking of drug and alcohol tests and he was not aware of any such policy at the time he received the testing notice.

97. Plaintiff was later informed that the basis for requiring him to submit to drug and alcohol testing was his profuse sweating when he presented for the meeting with Drover, even though Drover and David were both aware his sweating was consistent with his hyperhidrosis condition, which they had witnessed many times before.

## FIRST CLAIM FOR RELIEF
### Discharge arising from disability (42 USC 12101 et seq.)

98. Plaintiff repeats, re-alleges and incorporates each and every foregoing paragraph as though fully set forth herein.

99. Plaintiff was able to continue providing services to Defendant as a school teacher and meeting the requirements of said position with the reasonable accommodations requested.

100. Plaintiff's disability did not otherwise prevent him from performing the required duties of his position.

101. Defendant was aware at all relevant time periods of Plaintiff's hyperhidrosis, Legg–Calvé–Perthes disease, their attendant symptoms and pain, and that he was being treated following a right total hip replacement.

102. Defendant knowingly misused Plaintiff's hyperhidrosis as a basis for requiring him to submit to drug and alcohol testing.

103. Defendant knowingly denied Plaintiff an opportunity to contact his physician to discuss his health concerns regarding the drug and alcohol testing procedure.

104. Defendant unlawfully used Plaintiff's profuse sweating as the basis for requiring him to submit to drug and alcohol testing.

105. Defendant refused to allow Plaintiff to return to work following his meeting with Drover on October 16, 2014.

106. Defendant suspended Plaintiff from employment, without pay, on December 18, 2014.

107. Defendant unlawfully suspended Plaintiff from his employment because of his disability in violation of 42 USC 12101 et seq.

108. Defendant knowingly, intentionally and willfully discriminated against Plaintiff.

109. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages including, but not limited to, lost wages and future wages.

110. As a result of Defendant's unlawful conduct, Plaintiff has incurred attorney fees and costs of suit.

## SECOND CLAIM FOR RELIEF
### Retaliatory Discharge Arising from Plaintiff's Request for Reasonable Accommodation (42 USC 12101 et seq.)

111. Plaintiff repeats, re-alleges and incorporates each and every foregoing paragraph as though fully set forth herein.

112. Plaintiff was able to continue providing services to Defendant as a school teacher and meeting the requirements of said position with the reasonable accommodations requested.

113. Plaintiff's request for reasonable accommodations was never approved by Defendant.

114. Providing the reasonable accommodations would not have imposed an unreasonable or undue hardship on Defendant.

115. Defendant was aware of Plaintiff' disabilities and that he was undergoing treatment following a right total hip replacement during the relevant time periods, including the time Defendant suspended his employment.

116. Defendant was also aware that the conditions in Plaintiff's assigned classroom aggravated his hyperhidrosis.

117. Defendant suspended Plaintiff from employment, without pay, on December 18, 2014.

118. Defendant unlawfully terminated Plaintiff's employment because of his request for reasonable accommodation in violation of 42 USC 12101 et seq.

119. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages including, but not limited to, lost wages and future wages.

120. As a result of Defendant's unlawful conduct, Plaintiff has incurred attorney fees and costs of suit.

### THIRD CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

121. Plaintiff repeats, re-alleges and incorporates each and every foregoing paragraph as though fully set forth herein.

122. The actions of Defendant towards Plaintiff as set forth herein were extreme and outrageous, particularly given Defendant's knowledge of Plaintiff's medical conditions.

123. The actions of Defendant towards Plaintiff as set forth herein were intended to cause or recklessly or consciously disregarded the probability of causing Plaintiff severe emotional distress.

124. As a direct and proximate result of Defendant's extreme and outrageous behavior, Plaintiff suffered severe emotional distress.

125. As a result of Defendant's wrongful conduct, Plaintiff has incurred attorney fees and costs of suit.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this Honorable Court grant him judgment against Defendant for the following relief:

    a. Actual damages suffered by Plaintiff adequate to compensate him;

    b. Compensatory damages suffered by Plaintiff, including but not limited to lost wages, front pay and future wages;

c. Exemplary damages;

d. Pre-judgment interest;

e. Post-judgment interest;

f. Costs of suit;

g. Attorney fees;

h. Any other relief determined to be necessary and just.

Respectfully submitted,

Plaintiff Frank Slotkus

By: _____
Christopher T. Smith, Esq.
One of Plaintiff's Attorneys

## ILLINOIS SUPREME COURT RULE 222(b) AFFIDAVIT

I, Christopher T. Smith, pursuant to and in compliance with Illinois Supreme Court Rule 222(b), certify that the money damages sought by Plaintiff Frank Slotkus pursuant to the foregoing complaint are in excess of $50,000.00:

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

By: _____
Christopher T. Smith, Esq.
One of Plaintiff's Attorneys

William G. Potratz
Christopher T. Smith
**POTRATZ & ASSOCIATES, P.C.**
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602
Office: (312) 364-9100
Fax: (312) 364-0289
E-mail: potratz-law@potratz-law.com
Attorneys for Plaintiff Frank Slotkus

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned states that this Verification by Certification is made on my personal knowledge, and if I was sworn as a witness to testify at the trial of the above-cause, I could competently testify that I have read the foregoing Verified Complaint for Employment Discrimination and the facts alleged therein are true and correct, except as to matters stated to be upon information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Plaintiff Frank Slotkus

By: _____
Frank Slotkus

William G. Potratz
Christopher T. Smith
**POTRATZ & ASSOCIATES, P.C.**
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602
Office: (312) 364-9100
Fax: (312) 364-0289
E-mail: potratz-law@potratz-law.com
Attorneys for Plaintiff Frank Slotkus